UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | |
|---|---|
| ROBERT BURKART, <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )    Case No. 3:15-cv-50121 |
| | ) |
| CITY OF HARVARD, ILLINOIS <br>     Defendant. | )    Magistrate Judge Iain Johnston <br> ) |

**DEFENDANT, CITY OF HARVARD'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, the City of Harvard ("Harvard"), by and through its attorneys, Zukowski, Rogers, Flood & McArdle, and states as follows for its Memorandum of Law in support of its Motion for Summary Judgment (MSJ):

## I.    INTRODUCTION

The sole cause of action alleged in this litigation is that Plaintiff, Robert Burkart, was misclassified as an exempt employee and should be entitled to relief consistent with the Fair Labor Standards Act (FLSA), primarily what would be overtime wages for the hours worked in excess of forty (40) during the relevant lookback period. At particular issue in this MSJ is that the Plaintiff was properly classified as an exempt executive employee, and even if Plaintiff should have been classified as non-exempt, which Harvard strictly denies, Plaintiff's relief would be limited by the two year statute of limitations which would have expired on Feb. 28, 2015, three months prior to the filing of this case, on May 27, 2015.

The only way any portion of Plaintiff's claim could proceed would be to establish that: (1) the executive exemption is still factually in dispute; and (2) that the alleged misclassification of Plaintiff's position was "willfully" made by the City of Harvard, in which case the statute of limitations could theoretically extend to three years. 29 U.S.C. § 255(a). However, the only facts

which have been established, or can reasonably be established, show that the City Administrator properly classified Plaintiff as an exempt executive employee, and otherwise in good faith determined that the position of Superintendent of Parks and Recreation, which Plaintiff held for approximately thirteen years, was an exempt classification.

## II. APPLICABLE LAWS

1. Fair Labor Standards Act, 29 U.S.C. § 207(a)(1): Overtime Requirement

   Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

2. Section § 213(a)(1) of the FLSA provides the following "overtime exemptions":

   *[A]ny employee employed in a bona fide executive, administrative, or professional capacity* (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities). . . (emphasis added).

3. Section 255(a) of the Act provides the following statute of limitations:

   [I]f the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and *every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.* . . (emphasis added).

### III. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a party is entitled to summary judgment when "there is no genuine issue of any material fact even though such issue might have been raised by formal pleadings." *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cravatta v. Lopez*, 2016 U.S. Dist. LEXIS 139513 at *5 (N.D. Ill. 2016) (citing Fed. R. Civ. P. 56(a)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### IV. HARVARD'S CLASSIFICATION OF PLAINTIFF AS EXEMPT IS APPROPRIATE AS A MATTER OF UNDISPUTED FACT

Harvard maintains that Plaintiff was properly classified as an exempt employee. The two relevant exemptions for Harvard's defense are the executive and administrative exemptions. 29 U.S.C. § 213(a)(1). For purposes of this MSJ, Harvard acknowledges that the administrative exemption is not appropriately decided at this stage of the litigation, as a genuine issue of fact exists. Focusing on the executive exemption, the four basic elements are that: (a) the employee must make at least $455 per week; (b) the employee must manage the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (c) the employee customarily directs the work of two or more other employees; and (d) the employee must have the authority to hire and fire employees or to recommend the hiring and firing of the employees. 29 C.F.R. § 541.100.

3

A. **The Plaintiff made at least $455 per week.**

The allegation in the verified complaint (¶ 17) is that "Plaintiff was paid $22.85 per hour for a forty hour week during his employment as the Supervisor of Parks and Recreation." (Stmt. Facts, ¶3). Plaintiff further testified that he was, during relevant times to this proceeding, a salaried employee, and he would earn the same amount of money for a forty hour week even if he "might only work 20 hours." (Ex. A, Dep. Transcript of Robert Burkart, p. 98, ls. 17-22). Harvard does not dispute that Plaintiff was making $22.85 per hour, and asserts that simple math (40 hours x $22.85 = $914 per week) dictates that Plaintiff made at least $455 per week.

B. **Plaintiff managed the Parks and Recreation Department.**

The facts are undisputed that: (1) Plaintiff directly managed the Parks and Recreation Department; (2) Plaintiff's job title was the Superintendent of Parks and Recreation; (3) he was the first Parks and Recreation Superintendent; and (4) prior to the creation of the position, there was no distinct Parks and Recreation Department, and Harvard created the position "to be in charge" and oversee the affairs of the newly created Parks and Recreation Department. (Stmt. Facts, ¶¶ 4-7).

Plaintiff's job description, acknowledged by Plaintiff during the deposition, include *inter alia* that the position reports only "to the Mayor and City Administrator," that the position is responsible to be the "custodian of all public park property and park buildings," that the position "shall coordinate the activities of Park Maintenance workers, Life Guards and Dial A Ride employees," that the position is responsible for reports, goals, and budgets related to the Parks and Recreation Department (Stmt. Facts, ¶ 8).

During Plaintiff's deposition, he explicitly acknowledged the following aspects of the management, supervision, and at least semi-autonomous control he had over the Department:

4

1. He managed and supervised twenty-three (23) Department employees, in parks and the pool.

2. He managed, maintained, and developed policies including hours of operation of the pool and its registration fees.

3. He prepared and compiled records pertaining to the historical trends of the pool, such as enrollments and events, which he presented to the City Council.

4. He managed, and recommended policies pertaining to, the seven parks in the City of Harvard.

5. The value that Plaintiff identified that the parks properties had, including fixtures had was over $1.3 million.

6. Understanding he was the first Superintendent of a dedicated Parks and Recreation Department, he unilaterally identified problem areas with the parks and prioritized what needed to be done to improve the parks and had discretion to identify what needed to be done.

7. He gathered data, prepared a comparative analysis, and used his research to develop fees that Harvard would charge for use of its parks for various events.

8. He interviewed and recommended for hire Department employees, and was responsible for disciplining them and performing safety drills.

9. He was responsible for collecting and submitting payroll information for the employees in his Department.

10. He oversaw the maintenance of the parks, pool, equipment, and vehicles of the Department.

11. He oversaw various recreational activities, including swimming lessons and a travel basketball program, maintenance for third party baseball and football programs. The City programs were scheduled and publicized by Plaintiff, and he recommended the registration costs for the activities.

12. He delegated and oversaw work efforts of park employees to provide "setup, safety fencing, parking, securing . . . , mowing the grass, [and] moving equipment" on behalf of the City to assist with the major annual Milk Days event.

13. He had unilateral authority to spend up to $1,000 for Department purchases.

14. For expenditures in excess of $1,000, he sought bids and recommended the authorization of the expense to the City Council.

15. He recommended the installation of solar panels at a cost of $22,732 and was the "project manager" for Harvard's application for a solar energy rebate program.

16. He managed the City's Dial-A-Ride program and supervised a year round employee in that capacity.

17. He was tasked with preparing and providing a monthly report for the City Council "detailing work accomplished, programs completed or worked, any other activities, and time spent on each" on behalf of the Parks and Recreation Department.

18. He was the only person qualified to monitor the sanitation conditions of a concession stand, as well as monitoring the safety of the swimming pool including the determination of when either had to be closed and could be re-opened.

19. According to his own LinkedIn profile, he described that, in his role as Superintendent, he fixed "major problems the City was having with" the pool in a year's time, that he "was responsible for all the pool maintenance, water chemistry, hiring of pool staff, concession stands, pool parties and pool public relations [and] in charge of hiring all park employees and park maintenance, hiring of the Pace bus employees and Pace supervisor."

(Stmt. Facts, ¶¶ 9-28).

Numerous portions of Harvard's City Administrator's deposition further corroborate the general autonomy that Plaintiff had over the Department:

1. Administrator Nelson summarized his duties as follows: "He was the pool . . . The hiring and firing, scheduling and budget. Those kind of things. And the parks [he] was coordinating part-time seasonal employees to maintain the parks . .. general maintenance of park shelters and/or our buildings." Later, Administrator Nelson expanded that when Plaintiff took the newly created Superintendent position, "he was going to be in charge of the aquatic center, the parks, do programming. I mean, the idea at the time that we were looking at was to try to be a little bit more like a park district and offer programming" and for Plaintiff be responsible for "the management of the pool, hiring, firing, going to the bank with the money and those kind of things. Budgeting."

2. Plaintiff was solely responsible for hiring and firing Department employees.

3. Plaintiff "was supposed to be programming, budgeting, fiscal manager" of the Department."

    2.      Plaintiff was one of five Superintendent level employees for the City, each of whom ran their own department and reported only to the City Administrator, all of whom have always been classified as exempt.

    3.      Plaintiff had great autonomy and was not being directed or overseen by the City Administrator in general tasks. When asked who determined what Plaintiff did during the day, Administrator Nelson responded: "Bob [Plaintiff]."

    4.      Plaintiff had developed and completely oversaw a community service outreach program with court services to provide an opportunity for juveniles facing criminal penalties to perform community service for the Parks and Recreation Department.

(Stmt. Facts, ¶¶ 4-7, 16, 29-31).

By all accounts, including the Plaintiff's own account, Plaintiff had day-to-day autonomous control of the Parks and Recreation Department, its staff and its policies. Such indicia irrefutably establish that Plaintiff "managed" within the second element of the executive exemption. *See, e.g., Ottaviano v. Home Depot, Inc., Usa*, 701 F. Supp. 2d 1005, 2010 U.S. Dist. LEXIS 27279 (holding that assistant store managers who exercised substantially less autonomy and control over the store than Plaintiff does in the case at bar were exempt under the executive exemption).

### C. **Plaintiff customarily supervised two or more employees.**

Borrowing on the some of the same set of facts as established in Part V.B, *supra*, the undisputed fact is that Plaintiff regularly and customarily supervised multiple employees. According to Plaintiff's account, he managed and supervised twenty-three Department employees, in parks and the pool. (Stmt. Facts, ¶ 9). While understandably, Plaintiff will argue that the Department's employees were primarily seasonal, any reasonable construction of the

8

full-time equivalent employees that Plaintiff, on average, managed throughout the year is more than enough to meet this criteria. City Administrator Nelson estimated that the average number of FTEs Plaintiff supervised throughout the year was five to ten. (Ex. B, p. 52, ls. 1-7).

Turning to objective math, the most conservative version of the established record of the number of employees that Plaintiff managed/supervised included: (1) one bus driver he supervised year-round that worked sixteen hours per week, (2) eight to twelve pool staff that worked six-hour shifts, four days per week during pool season which lasted during summer break, and (3) parks crew ranging from four to seven who worked thirty to forty hours per week, five or six months. (Ex. A, pp. 17-21, 62) (Ex. B, pp. 51-52). Throughout the year, using these conservative numbers and the low-end of the range when it comes to hours or months worked, reveals the following:

| Employee Type | # | Hrs/Week | Weeks Worked | Annual Hours Worked |
|---|---|---|---|---|
| Bus Driver | 1 | 16 | 52 | 832 |
| Pool | 8 | 24 | 12 | 2304 |
| Parks | 4 | 30 | 21 | 2520 |
| | | | Total: | 5656 |

The total number of hours supervised by Plaintiff is thus no less than 5,656 hours, which equates to no less than 2.72 FTE if we consider a FTE at 2,080 hours per year, the highest number of hours used by any standard metric. *See* Internal Revenue Service calculations, available at: *https://www.irs.gov/uac/small-business-health-care-tax-credit-questions-and-answers-determining-fees-and-average-annual-wages*. And again, this is the most conservative version of Department employees, and does not include the Dial A Ride Supervisor, nor does it reconcile with Plaintiff's own statement that he managed twenty-three employees in his

9

Department. Therefore, Plaintiff undoubtedly managed and supervised two or more employees to meet this element of the executive exemption. 29 C.F.R. § 541.100.

D. **Plaintiff had hiring and firing authority.**

As previously established, both parties have acknowledged the advisory authority, if not the unilateral authority, for Plaintiff to hire and fire Department employees. (Ex. A, p. 131, ls. 7-21), (Ex. B, p. 31, ls. 9-23). City Administrator Nelson was unequivocal that the authority rested solely with Plaintiff when he stated that all hiring and firing for the Department was Plaintiff's responsibility and he, as the City Administrator, was not involved. (Ex. B, p. 31, ls. 7-23).

Acknowledging that Plaintiff made a less definite statement in stating that he only recommended employees for hire and that there was an isolated incident of the Mayor asking him to not hire one individual in particular, Plaintiff otherwise admits that all of his recommendations for hire were accepted. (Ex. A, pp. 31-32). And, of course, Plaintiff acknowledged that in his own words in his LinkedIn profile described him as hiring employees in the Department. (Ex. A, p. 131, ls. 7-21). Furthermore, while Plaintiff states that he never fired anyone, he admits that he was responsible for employee discipline and indicates that he never had to fire anyone. (Ex. A, p. 32, ls. 6-15). Moreover, to negate any possible argument Plaintiff may make on the authority to hire and fire, the element requires only the ability to make "suggestions and recommendations" in hiring and firing, it does not necessitate that the Plaintiff must possess unilateral authority. *Freeman v. City of Mobile*, 1994 U.S. Dist. LEXIS 15672 (S.D. Ala.). All facts indicate Plaintiff and nobody else in a supervisory capacity oversaw, hired, trained, or disciplined the Department's several employees. 29 C.F.R. § 541.100.

Based on the four elements of the executive exemption having been met with an undisputed factual foundation, the case must be dismissed as there is no set of facts which would

allow the Plaintiff to succeed in the alleged cause of action of an FLSA violation. *Id.*; *Plaunt v. Dolgencorp, Inc.*, 2010 U.S. Dist. LEXIS 132135 (M.D. Pa.).

## V. EVEN IF THE EXEUCTIVE EXEMPTION DOES NOT APPLY, WHICH IT SHOULD, ANY ALLEGED VIOLATION CANNOT BE DEEMED TO BE "WILLFUL"

No genuine issue of fact exists which could establish that Harvard willfully misclassified Plaintiff as exempt, even if an exemption somehow did not apply.

### A. Law Concerning "Willful" FLSA Violations

1. "The statute of limitations for FLSA violations is two years, unless there was a 'willful violation,' in which case the limitations period is three years." *Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1024 (N.D. Ill. 2013).

2. "The plaintiff bears the burden of establishing willfulness for purposes of the statute of limitations." *Id.* (citing *McDonald v. Vill. of Palatine*, 2012 U.S. Dist. LEXIS 92427 at *3 (N.D. Ill.)).

3. To establish willfulness, the plaintiff must establish that the defendant knew or was recklessly indifferent as to the FLSA violation. *E.E.O.C. v. Madison Cmty. Unit Sen. Dist.*, 818 F.2d 577, 585 (7th Cir. 1987).

4. A violation cannot be deemed willful if an employer "acts reasonably in determining its legal obligation." *Caraballo*, 969 F. Supp. 2d at 1025 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 136 n. 13 (1988). Furthermore, what is "reckless" to trigger a willful violation is commonly held to be something more than an unreasonable action by the employer. *See, e.g., Reich v. Newspapers of New Eng.*, 834 F. Supp. 530 (D.C. NH 1993); *McConnell v. Thomson Newspapers, Inc.*, 802 F. Supp. 1484 (E.D. Tex. 1992).

5. Stated another way, an employer's mere negligence or good faith, even if mistaken, in determining an employee's exempt status does not constitute the willfulness necessary to extend the statute of limitations to three years. *Carabello*, 969 F. Supp. 2d at 1025.

### B. The City made a reasonable determination that the Superintendent of Parks and Recreation was an exempt position.

The sole person responsible for the determination that Plaintiff should be classified as an exempt employee was City Administrator Nelson. (Stmt. Facts, ¶32). The reasons and factual context in which City Administrator Nelson made the determination include the following:

1. Nelson was trained and qualified to make the exempt status determination with his Master's degree in public administration and twenty-eight years of direct experience as Harvard's City Administrator, which he relied on in making the determination of the Parks and Recreation Superintendent and all other City employees. (Ex. B, pp. 43-45).

2. A job description was put together by piecing together job descriptions from other municipalities that had a Parks and Recreation Department and Superintendent. (Ex. B, p. 30, ls. 8-15).

3. Nelson had looked at similar positions in surrounding communities and identified that "they were all exempt." (Ex. B, p. 43, ls. 3-10).

4. Internally, the position was one of five positions in the "second tier" of management in the organizational chart of the City of Harvard, reporting directly to the City Administrator who is the day-to-day CEO of the organziation. (Ex. B, pp. 39-40).

5. The four other positions that were on the "second tier" have always been exempt positions, including the Chief of Police, and the superintendents/directors of Public Works

Department, Community Development, and the Public Utilities Department. (Ex. A, p. 25, ls. 15-21); (Ex. B, p. 43, ls. 11-15).

6. Nelson himself had no wherewithal to manage the Parks and Recreation Department and agreed that he has been "completely dependent on the parks and rec superintendent to take care of the pool," along with other park oversight such as programming and maintenance, as Nelson further describes "just like the chief of police is responsible for the police." (Ex. B, pp. 45-47).

7. Nelson had infrequent communication with Plaintiff and did not direct Plaintiff in his day-to-day tasks and duties, again because Plaintiff was supposed to take care of the Parks and Recreation Department mostly autonomously. (Ex. B, p. 38, ls. 5-24; p. 56, 18—p. 57, l. 8)

8. Never in the twenty-eight years that Nelson has managed the City of Harvard has a question or challenge been made to classifications of exempt employees, much less the Parks and Recreation Superintendent position until this lawsuit was filed. (Ex. B, p. 44, l. 23—p. 45, l. 10).

The City Administrator, trained in public administration and with almost three decades of successfully classifying employees without a problem, and having created the Plaintiff's position for the specific purpose of planning and overseeing a discrete Parks and Recreation Department, following the same parameters that were used for the four peer exempt positions which oversee distinct departments within the City of Harvard, made an informed and good faith decision that the Superintendent of Parks and Recreation was exempt, as was every other Superintendent of Parks and Recreation in other municipalities.

With this backdrop, even if it could be argued that the executive exemption does not apply, which it should, there is no evidence whatsoever that Plaintiff's classification as exempt

13

was malicious or an intentional attempt to subvert the FLSA in a manner necessary to sustain a "willful" violation. Plaintiff has no evidence that can create an issue of material fact in this regard. Plaintiff during his deposition, when asked if he ever engaged in a conversation about his classification as an exempt employee, ultimately said "I don't recall." (Ex. A, p. 82, ls. 3-7). All he could recall is that various City employees told him he was "overworked and underpaid"; but at the same time Plaintiff testified that nobody, including himself, ever mentioned the word "exempt" or otherwise addressed his classification. (Ex. A. pp. 80-82). Plaintiff has no evidence to establish that Plaintiff's classification as exempt was anything but a sincere and reasonable determination.

### C. The case must be dismissed because, without a "willful" violation, Plaintiff's claim is barred by the two year Statute of Limitations.

The law requires that the case be dismissed because the FLSA is barred by the two-year statute of limitations, barring a willful violation which cannot be determined to exist here. A violation cannot be deemed willful if an employer "acts reasonably in determining its legal obligation." *Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1025 (N.D. Ill. 2013) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 136 n. 13 (1988)). Stated another way, even an employer's negligence or good faith, even if mistaken, in determining an employee's exempt status does not constitute the willfulness necessary to extend the statute of limitations to three years. *Carabello*, 969 F. Supp. 2d at 1025. A point of emphasis is also that Plaintiff bears the burden to prove a willful violation occurred: "the plaintiff must present sufficient evidence of willfulness to survive summary judgment." *Id.* at 1024-25.

Case law which examines willfulness in similar factual situations ubiquitously holds that an employer, such as Harvard in the case at bar, cannot be deemed to have willfully violated the

14

FLSA. As in the *Carabello* case, where the plaintiff paramedic failed to present any evidence of a "willful" violation and the court applied the two year statute of limitations, so too should the court apply the two year statute of limitations and dismiss the case. *Id.* at 1025. Even more recently in *Calderon v. GEICO General Insurance Co.*, 809 F.3d 111 (4th Cir. 2015), the court reviewed an insurance company's practices in classifying its investigators as exempt. Despite finding that the company had twice reviewed the classification of the investigators and improperly classified the employees as exempt, the court still found "there was no basis upon which a reasonable [fact finder] could conclude that GEICO's decision to classify its investigators as exempt was knowingly incorrect or reckless." *Id.* at 131. The case at bar even more strongly favors a finding that willfulness does not exist because Plaintiff's position matches up with all the executive exemptions elements, and even if somehow the facts would invalidate the determination, which they should not, at a minimum the determination was made in good faith and reasonable—a far cry from the recklessness necessary to sustain a willful violation allegation. *Id.*

Wherefore, for the reasons above, Defendant, City of Harvard, requests that this Court enter Summary Judgment in its favor and against the Plaintiff, denying the Plaintiff's Complaint, and for other such relief as the Court deems equitable and just.

                              Respectfully Submitted,
                              CITY OF HARVARD

                              By    /s/ Bradford S. Stewart
                                      One of its Attorneys

Bradford S. Stewart, Atty. No. 06310252
Zukowski, Rogers, Flood & McArdle
Attorney for Defendants
50 Virginia Street, Crystal Lake, IL 60014
Phone: (815)459-2050; Fax: (815)459-9057
Z:\H\HarvardCityof\Burkart, Robert\MemorandumLawSupportMotSJ.doc